OPINION OF THE COURT
Per Curiam.
The Commission on Judicial Conduct sustained two charges of misconduct and determined that petitioner, a part-time City Court. Judge, should be removed from office (see NY Const, art VI, § 22; Judiciary Law § 44). Based upon our plenary review of the evidence, we sustain the findings of misconduct and accept the determined sanction of removal.[1]
Petitioner was appointed a part-time Judge of the White Plains City Court in January 1997. Her duties included presiding over small claims cases on alternate Wednesdays and substituting for the full-time judge when necessary. Petitioner’s caseload was approximately 75 to 80 small claims cases per year. The Commission’s complaint alleged two charges of *875 misconduct based on petitioner’s failure to render timely decisions despite repeated direction to do so by the Ninth Judicial District Administrative Judge; her submission of inaccurate and incomplete quarterly reports of undecided cases; and her failure to provide prompt responses to several Commission inquiries (see 22 NYCRR 100.1, 100.2 [A]; 100.3 [B] [7]; [C] [1]).
Soon after assuming her judicial duties — and despite a small caseload typically requiring only brief written decisions— petitioner began to accumulate a backlog of undecided cases. Sixty-seven of petitioner’s cases were not decided in a timely manner. When the cases were eventually decided, many had been pending for extended periods of time, including 33 pending between one and two years and seven pending for over two years. An additional seven cases — commenced between 7 and 18 months prior to petitioner’s hearing before the Commission — were still pending as of the date of that hearing.
In the face of these delays, petitioner failed to report several of the undecided cases as pending for longer than 60 days on her quarterly reports for 1998, 1999 and 2000 (see 22 NYCRR 4.1). Petitioner’s reports for the first three quarters of 1998 falsely stated that none of her cases remained undecided for 60 days or longer, when in truth there were several such cases in each quarter. Her first quarterly report for 1999 also listed as pending only a portion of the cases that were actually undecided for at least 60 days, and indicated that nine of the cases would be decided by July 21, 1999, but none were. The remaining three quarterly reports for 1999 were each filed late — in March 2000 — listing most of the same cases as pending undecided, and the final two reports failed to include several cases pending longer than 60 days. Petitioner’s quarterly reports for 2000 again improperly omitted some pending cases; two of the reports stated that decisions would be made by a date certain, but petitioner failed to meet even her own deadlines.
This pattern of behavior persisted despite the repeated efforts of the Administrative Judge. He wrote her several times requesting the reports, reminding her that the delays were totally unacceptable and urging her to resolve the cases promptly. Additionally, he sent her correspondence from the statewide Deputy Chief Administrative Judge stating that she could be subject to Commission sanction if her errant behavior continued, and correspondence from litigants seeking resolutions of their cases. The Administrative Judge and his law clerk also met twice with petitioner in order to discuss the undecided matters. At the second meeting, in April 2000, they *876 formulated a plan whereby petitioner would reduce her backlog by deciding five of her pending cases per week, but she failed to adhere to the plan and her backlog continued.
In October 2000, the Commission initiated its inquiry by let1 ter to petitioner requesting information regarding a 16-month delay in rendering a decision. Petitioner ignored the Commission’s letter — and three follow-up letters — until she appeared before the Commission for a hearing in December 2000. Subsequent to the hearing, petitioner, who at the time represented herself, received another letter from the Commission requesting additional information by a certain date, but did not respond until approximately 3V2 weeks after the time specified.
After the Commission sustained the charges and determined that the appropriate sanction was removal, petitioner through counsel sought reconsideration based on new evidence. The attorney introduced evidence that, after the hearing, petitioner was examined by a psychologist, who opined that her conduct and judgment could have been affected by alcohol use possibly combined with depression, purportedly a common side effect of diabetes. Although petitioner was diagnosed with diabetes prior to the hearing, she never raised the issue of her medical condition during the disciplinary proceeding. The Commission granted petitioner’s motion for reconsideration and adhered to its original determination.
Petitioner now asks us to consider the entire record before the Commission, including the evidence introduced in her motion for reconsideration, and reduce the sanction. In the alternative, petitioner requests that the matter be remitted to the Commission to reopen the hearing.[2]
In Matter of Shaw (96 NY2d 7 [2001]), we determined that we could not consider evidence submitted in support of a motion to reconsider after the Commission itself declined reconsideration (see 96 NY2d at 13 n 3). Here, however, the Commission granted petitioner’s motion to reconsider, reviewed the evidence submitted in support of the motion and adhered to its original determination. Consequently, the evidence submitted in support of the motion for reconsideration became *877 part of “the record of the proceedings upon which the commission’s determination was based” (NY Const, art VI, §22 [d]; Judiciary Law § 44 [9]), and thus, we may consider such evidence when determining whether to accept or reject the Commission’s sanction.
Petitioner clearly did not handle her cases in an efficient or expeditious manner (see 22 NYCRR 100.3 [B] [7]) and did not cooperate with her supervisors in handling her judicial responsibilities (see 22 NYCRR 100.3 [C] [1]). Unquestionably, delays in deciding pending cases should be addressed administratively. Indeed, “the more severe sanctions available to the Commission should only be deemed appropriate and necessary when the Judge has defied administrative directives or has attempted to subvert the system by, for instance, falsifying, concealing or persistently refusing to file records indicating delays” (see Matter of Greenfield, 76 NY2d 293, 298 [1990]). All of these factors are present here, where petitioner filed late, incomplete and false quarterly reports and maintained a persistent backlog, with some delays of longer than two years. Petitioner engaged in this conduct despite repeated administrative efforts to assist her. Petitioner’s conduct demonstrated that she was either unwilling or unable to discharge her judicial duties and, as a result, the Commission’s determined sanction of removal was warranted.
Accordingly, the determined sanction should be accepted, without costs, and Roseanna H. Washington removed from her office as Judge of the White Plains City Court.
Chief Judge Kaye and Judges Smith, Ciparick, Rosenblatt, Graffeo and Read concur in per curiam opinion.
Determined sanction accepted, without costs, etc.

. Petitioner’s term expired December 31, 2002.

. This Court’s powers of review are limited to reviewing the legal and factual findings of the Commission, deciding whether to accept or reject the Commission’s sanction and, if the sanction is rejected, deciding whether to impose a different sanction or no sanction at all (see NY Const, art VI, § 22 [d]; Judiciary Law § 44 [9]).